EUSEBIO LOYA, JR., V. THE STATE.

No. 22557.   Delivered June 23, 1943.

The opinion states the case.

*F. G. Garza* and *Jesse G. Foster*, both of Raymondville, for appellant.

*Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the murder of his father, and by the jury assessed a term of ten years in the penitentiary.

The State's testimony showed that on July 19, 1942, two sons of the deceased Eusebio Loya, Sr., appellant and Manuel Loya, came to the undertaker's house in Raymondville, Willacy County, Texas, early in the morning and stated that their father was dead, and they needed the services of an undertaker. Answering such call, the undertaker found the body of Eusebio Loya, Sr., a very large man, weighing about 430 pounds, who was dead. The body was placed on a cot and taken to the mortuary. Upon being moved from the cot, a spot of blood was found on the pillow, and upon closer inspection the mouth was found

filled with blood, and a hole resembling a bullet hole was found just over and a little back of the right ear. Upon being probed, this opening extended downward and inward, finally penetrating the trachea on one side only. A post-mortem examination merely confirmed the exploratory probe; the bullet, or whatever had caused the wound, ended its penetration in the trachea, and same was never found, if such there was in the body, one doctor saying it was like looking for a needle in a haystack to hunt for a bullet in this large body.

The officers, who were at once summoned, found a 22 Winchester rifle in the deceased's home, which bore the scent of recently burned powder. About a week afterwards the officers took appellant into custody without a warrant, and carried him to a nearby jail at Kingsville in Kleberg County. There he was kept for about seven or eight days, after which he was released on August 4, 1942. Again, about three and one-half months thereafter, on November 19, 1942, a justice of the peace issued a warrant, based on a complaint, charging appellant and his brother Manuel with the murder of their father, and appellant was again taken into custody thereon and returned to the Kingsville jail. He was then taken to San Antonio and placed before what was called a "lie detector." The following day he was returned to Kingsville, and after further questioning he made a statement in the nature of a confession. He was then taken to Raymondville, the county seat of Willacy County, and again made a statement in the presence of the assistant district attorney of Cameron County, the justice of the peace, and some peace officers.

The appellant showed by proof of numerous members of his father's family that on the later afternoon of the night of the father's death some members of the family were sitting out in the yard at the family home, holding a pleasant conversation, appellant and wife living in a nearby cottage, he not being present at such time. That the father was sitting in his specially built chair, and his three daughters lying on the father's bed inside the house, and joining in the conversation through an open nearby window. That the father got up from his chair, and just as he entered the door of the home he remarked that he had a chill; his bed was immediately prepared, and he laid down thereon. The father's condition grew worse, and a doctor was called, who talked with deceased some few minutes, and finally gave him a hypodermic of some kind, and deceased soon slept. The family remained in the room, however, and after the passage of some time they noticed deceased's breathing became

irregular, and he finally died in his sleep. Appellant's family all testify to hearing no shot, to the continued presence of a gun in the deceased's room, and to no complaint from deceased other than the chill.

We think it is clear that the deceased came to his death, as testified to by one doctor, as a result of violence as evidenced by the wound in the head; it is also clear that appellant's only connection with such violence is the statement made by him in Raymondville to the officers there of date November 21, 1942.

The introduction of this confession was vigorously protested on the claim that it was involuntary, appellant contending that he was beaten, handcuffed with handcuffs and a chain thereto; that he was jerked around by said chain; that some kind of an electrical instrument was used to prod his testicles, which caused him great pain; that he was made to stand upon tin cans, and was kept thus standing for great lengths of time; that he was blindfolded and caused to take off all his clothes, save his shirt. That he was continuously told to tell that he killed his father, and in order to save himself from further injury and punishment he signed a confession. That on the next day he was taken to Raymondville, and was told by Ranger Riggs that he must make another confession there in the presence of the officers, or he would be taken back to Kingsville. That he made such second confession in the presence of the justice of the peace and assistant district attorney, and at such time he was not mistreated by anyone in any way, but that he was still laboring under the fear of being taken back to Kingsville and again mistreated.

The first confession, taken at Kingsville, was not introduced in evidence.

When the second confession, taken at Raymondville in the presence of the officers, was offered in evidence the jury was retired and the matter gone over in the presence of the court. Bill of exceptions No. 1, relating thereto, is very voluminous, consisting of 60 pages in the transcript, entirely in question and answer form, with no certificate by the trial court of the necessity therefor. We can not consider such under our rules of procedure on appeal. However, bill of exceptions No. 2 relates to the same matter, and is also voluminous, consisting of 64 pages in the transcript, in a narrative form, and we proceed to consider the same.

The persons present at the taking of the statement in Raymondville all testified, as did appellant, that no mistreatment of any kind was had by appellant at the time of the taking of such statement, and that same was voluntarily made by him without any persuasion or coercion of any kind at such time. That Ranger Riggs, whom he claimed was his principal tormentor at Kingsville, was not present when same was taken. All mistreatment, charged by appellant to have taken place at Kingsville, was denied not only by those charged by appellant therewith, but also by others who were present at the taking of the first statement, under the influence of which claimed mistreatment and fear of its repetition appellant asserted the last statement was made.

It should be understood that the Kingsville statement was not introduced in evidence, but the State relied upon the Raymondville statement, and the trial court allowed the introduction of same under an instruction to the jury relative to its voluntary character, as follows:

"You are further instructed that a confession of a defendant, in order to be admissible in evidence against him, must be in writing and signed by said defendant and shown by the evidence to have been freely and voluntarily made, without compulsion or persuasion, and in regard to the alleged confession of the defendant offered in evidence by the State and permitted to go to the jury, you are instructed that before you can consider the same as any evidence against the defendant, the State must show, that the defendant was warned by the officer taking the same: (1) that he, the defendant, did not have to make any statement at all; (2) That any statement made by him, the defendant, may and could be used in evidence against him on a trial for the offense concerning which it was made. So in this case, if you believe from the evidence that the officer taking such confession, did not warn the defendant, that he did not have to make any statement at all, and did not warn him, that any statement he might make could be used as evidence against him, on a trial for the offense concerning which it was made, or if you believe from the evidence that such confession was not freely and voluntarily made, or if you believe the same was induced by duress, threats, coercion, fear, fraud, or by persuasion, or by promise of immunity, or through any other improper influence, or if you have a reasonable doubt as to whether he was warned by the officer taking such confession, or as to whether it was freely and voluntarily made, or as to whether it was induced by duress, threats, coercion, fear, fraud, or by persuasion, or promise of immunity, or through any other im-

proper influence if any, imposed either at Kingsville, San Antonio, Raymondville or at any other place, then you will wholly disregard such confession and consider it for no purpose whatever, and draw no inference nor conclusions therefrom, and acquit the defendant, unless you believe from the other evidence in the case, if any, beyond a reasonable doubt, that the defendant's guilt has been established of the offense charged in the indictment."

Unquestionably there was an overwhelming amount of testimony upon which the absence of mistreatment at the second confession could have found support, as well as the absence of any mistreatment at the first confession, such absence being shown by such credible testimony. The scars claimed to have been left on appellant's wrists by the harsh conduct of the officers were accounted for by Dr. Conley, who was called upon to make a physical examination of appellant on the day the last purported confession was made. He said that there were no abrasions, scars or fresh wounds upon his body; that appellant stated there were no such wounds. He examined him from head to foot, and found nothing save some evidences that appellant had suffered from the itch and ringworm, for which this doctor had been treating him. On his wrists there was some evidence of the itch where the appellant had scratched, as well as itch scratches on his body. His shirt was not torn, nor was there any blood on it, or on any of his clothing, but at the request of appellant's attorney the doctor found and pointed out other places on appellant's body where he was evidently suffering from the itch thereon.

The whole truth has not been told in this case, and it seems to be a difficult problem to solve. Undoubtedly the appellant's father died from the wound in his head, which must have caused extravasated blood, from which he was slowly caused to die. There was blood in his mouth, and blood in his lungs, and surely the wound in the head had produced some amount of blood, and the immediate family, who claimed to have watched by the bedside as this death came upon him, could have, or certainly at least should have seen the condition of their father as his dissolution progressed.

Appellant requested the trial court to give in charge to the jury the following: "You are further instructed that if you believe that the first alleged confession, taken at Kingsville, was not freely and voluntarily made, or was a forced, induced, or influenced confession, and that the subsequent confession was

made soon thereafter, in the presence of or under the domination of the same officer who produced the first alleged confession, then the same influences and the same force, if any, would not have to be repeated in order to make the subsequent alleged confession, alleged to have been taken at Raymondville, Texas, an involuntary one."

Again, appellant requested the following charge to be given to the jury: "You are further instructed that if you believe that the first alleged confession, taken at Kingsville, was obtained by reason of persistent and protracted questioning, and that the subsequent confession was made soon thereafter, in the presence or under the dominion of the same officers who procured the first alleged confession, then the same influences, if any, would not have to be repeated in order to make the subsequent alleged confession, alleged to have been taken at Raymondville, Texas, an involuntary one."

Both of these requested charges were refused by the trial court, who stated in his qualification thereto that same were covered in the main charge, paragraph twelve, which we have herein above set forth in its entirety.

We think this was error, and that some such a charge as requested should have been given. That is, the jury should have been told that if they believed that the first confession, being the one taken at Kingsville, was not made voluntarily and free from coercion, duress or fear, then it would be presumed that the second confession, taken at Raymondville, was alike influenced by such coercion, duress or fear, and it would be the duty of the State and the burden upon it to show that such influences were not present at the time of the taking of such second confession In the words of Branch's Penal Code, p. 41: "Where the confession has been obtained by improper influence, it is not rendered admissible where defendant is then warned, and repeats it while still under such influences. Barnes v. State, 36 Texas, 357 Clayton v. State, 31 Tex. Crim. Rep. 490, 21 S. W. 255." We cite also Searcy v. State, 28 Tex. App. 513; 13 S. W. 782, 19 Am. St. Rep. 851; Williams v. State, 88 Tex. Cr. R. 87; 225 S. W. 177.

We said in Hernandez v. State, 8 S. W. (2d) 952: "If appellant had been threatened by the officers and put in fear of his life, or if the conduct of the officers in the absence of an open threat had been such as to put appellant in fear of his life, and this was still operating upon his mind at the time he made the written confession, the same would not be admissible."

The testimony in this cause relative to the confession taken at Kingsville is remarkably similar to the first confession taken in the case of Cavazos v. State, 160 S. W. (2d) 260, and while such similarity might cause us to think that appellant was doubtless familiar with the Cavazos case, nevertheless his testimony, whether true or false, should have caused the trial court to follow the procedure laid down in the Cavazos case, and submitted the same to the jury on the doctrine that if the jury believed that such alleged punishment, practically identical with the Cavazos testimony, had been administered to appellant at the first confession, then it was the duty of the court to instruct the jury that the State had the burden of showing that the second confession was not made under the fear or the influences which dominated the first confession, if any such there was. See Abston v. State, 136 Tex Cr. R. 152, 123 S. W. (2d) 902; Thompson v. State, 124 Tex. Cr. R. 440, 63 S. W. (2d) 849; Williams v. State, 88 Tex. Cr. R. 87, 225 S. W. 177; Walker v. State, 7 Tex. App. 245, 32 Am. Rep. 595; also 18 Tex. Jur., p. 165, and cases there cited under notes 16 and 17. The case of Smith v. State, 132 S. W. (2d) 264, we think to be in point just here, which case was reversed for the trial court's failure to give a charge of like import to the one here presented under similar facts.

This rule has long been established in our English jurisprudence. Mr. Greenleaf in his treatise on Evidence, says in Section 221, 13 Ed.: "But though promises or threats have been used, yet if it appears to the satisfaction of the judge that their *influence was totally done away* before the confession was made, the evidence will be received." It should naturally follow that where the presence or not of such influences is submitted to the jury for its determination, and such presence should be determined to be present, then the duty of the State seems clear to be that such influences should be shown to have ceased to operate upon an accused's mind before his statement taken thereafter should be received by the jury. See Johnson v. State, 48 Tex. Cr. R. 427, 88 S. W. 223.

For the reasons as above set out, this judgment is reversed and the cause remanded.